NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KHALEAF MAJEED NELSON,                      : | Civil Action No. 12-2575 (JBS) |
|                      : | |
|             Plaintiff,      : | |
|                      : | |
|        v.                      : | |
|                      : | |
| OFFICER JAMES HERBERT, et al.,      : | |
|                      : | |
|             Defendants.      : | |
|                      : | |
| KHALEAF MAJEED NELSON,                      : | Civil Action No. 12-1231 (JBS) |
|                      : | |
|             Plaintiff,      : | |
|                      : | **OPINION** |
|        v.                      : | |
|                      : | |
| ATLANTIC COUNTY, et al.,      : | |
|                      : | |
|             Defendants.      : | |

SIMANDLE, Chief Judge:

These two matters come before the Court upon an application to proceed in forma pauperis in Nelson v. Herbert, Civil Action No. 12-2575 (JBS) (D.N.J.), Docket Entries Nos. 1 and 1-1; and an application to proceed in forma pauperis in Nelson v. Atlantic City, Civil Action No. 12-1231 (JBS) (D.N.J.), Docket Entry No. 6. The court will grant both applications to proceed in forma pauperis and screen the complaints pursuant to 28 U.S.C. § 1915(e)(2).

For the reasons discussed below, the majority of the
complaint in Nelson v. Herbert will be dismissed with prejudice;
however, the court will dismiss one claim without prejudice to
filing a timely motion to amend.  Similarly, the court will also
dismiss Plaintiff's complaint in Nelson v. Atlantic City with
prejudice.  Both actions present claims which are not cognizable
because they are barred by certain immunities, lack a plausible
factual basis or the court does not have jurisdiction to hear
them.  Consequently, with the exception of the Fourth Amendment
claim in Nelson v. Herbert, any amendment would be futile and the
complaints will be dismissed with prejudice.

**I.   BACKGROUND**

**A.   The Relevant Civil Matters and Plaintiffs' Identities**

The first above-captioned matter, Nelson v. Herbert, Civil
Action No. 12-2575(JBS)("Nelson-IV"), is related to three other
actions previously commenced in this District, namely, Nelson v.
New Jersey, Civil Action No. 10-1374 (JBS) ("Nelson-I")
(commenced 3/16/2010, terminated 6/18/2010); the already
mentioned Nelson v. Atlantic County, Civil Action No. 12-1231
(JBS) ("Nelson-II") (commenced 2/29/2012, terminated 4/3/2012);
and Nelson v. Karins, Civil Action No. 12-1779 (JBS) ("Nelson-III") (commenced 3/22/2012).  In reviewing these four actions,
the names of the plaintiffs suggest that these four complaints
were filed by the same person or related individuals.

2

Consequently, it is necessary for the court to examine all four actions to provide a complete background of the instant matters.[1]

The public records of the New Jersey Department of Corrections, searched online by this Court in connection with screening of the pleadings and in forma pauperis applications submitted in Nelson-I, Nelson-II and Nelson-III indicated that a certain individual known as **both** "Khali M. Nelson" ("Khali") and "Khaleaf M. Nelson" ("Khaleaf"), born on January 12, 1985, was convicted in the Superior Court of New Jersey, Law Division, Atlantic County, of crimes of assault and possession of controlled substances (which offenses took place on March 16, 2006), and of the offense of distributing controlled substances on school property (which offense took place on August 24, 2007). See <<https://www6.State.nj.us/DOC_Inmate/details?x=1400386&n= 0>>.  In addition, the records of the New Jersey Department of Corrections indicated that a certain individual known as "Khalid Nelson," who was born on July 21, 1976, was convicted for distributing controlled substances on school property. See <<https://www6.state.nj.us/ DOC_Inmate/details?x=1064058&n=1>>.

The Court's above-mentioned research of the records of the New Jersey Department of Corrections records was prompted by the

---

[1]  The Court takes this opportunity to remind the litigants who commenced this cluster of Nelson actions that, pursuant to Local Rule 11.1, each pleading must be executed under the litigant's official name.

confusion ensuing from submissions made in Nelson-I, Nelson-II and Nelson-III.

Specifically, on March 16, 2010, an individual referring to himself as "Khali Majeed Nelson" ("Nelson-I Plaintiff") submitted a civil complaint that gave rise to Nelson-I.  The Nelson-I Plaintiff indicated that he was a pre-trial detainee held at the Atlantic County Justice Facility ("ACJF") and his prison identification number was "182019."  See Nelson-I, Civil Action No. 10-1374.

On February 29, 2012, the Clerk received another civil complaint which gave rise to Nelson-II and indicated that the plaintiff in that matter was an individual who referred to himself as "Khaleaf Majeed Nelson" ("Nelson-II Plaintiff").  See Nelson-II, Civil Action No. 12-1231.  The Nelson-II complaint indicated that the Nelson-II Plaintiff was also a pre-trial detainee held at the ACJF, but his prison identification number was not "182019," rather, it was "183904."  See id.

Two weeks later, on March 22, 2012, the Clerk received another civil complaint which gave rise to Nelson-III and indicated that it was submitted by an individual ("Nelson-III Plaintiff") who, like the plaintiff in Nelson-I, referred to himself as "Khali Majeed Nelson" and stated that he, too, was held at the ACJF, although he had a prison identification number different from the Nelson-I Plaintiff and the Nelson-II

4

Plaintiff.  Nelson-III Plaintiff's prison identification number was "202907."  See Nelson-III, Civil Action No. 12-7779.

On May 1, 2012, a fourth Nelson submission was filed which gave rise to Nelson-IV.  See Nelson-IV, Civil Action No. 12-2575, Docket Entries Nos. 1 and 1-1.  The submissions in Nelson-IV consisted of a pleading and an in forma pauperis application; both were made on behalf of "Khaleaf Majeed Nelson" confined at the ACJF under another prison identification number, "202906." See id.

The court will now review the procedural history and substantive allegations in each Nelson filing to provide a proper background to the Nelson II and Nelson IV complaints which are now before the court pursuant to 28 U.S.C. § 1915.

> 1.   Nelson-I (Civil Action No. 10-1374)

The complaint in Nelson-I arrived unaccompanied by a filing fee or by a complete in forma pauperis application.  See id., Docket Entry No. 1.  Therefore, this Court denied the Nelson-I Plaintiff in forma pauperis status without prejudice.  See Nelson-I, Docket Entries Nos. 2 and 3.  Thereafter, the Nelson-I Plaintiff filed a curative IFP application, see id., Docket Entry No. 4, but the Clerk's mailing of this Court's order directing the reopening of Nelson-I was returned as undeliverable, see id., Docket Entries Nos. 5 and 6, and consequently, on June 18, 2010, the Court dismissed Nelson-I on the grounds of failure to

prosecute.  See id., Docket Entry No. 7. No other submission was
ever made in that matter.  See id., Docket.

2.   Nelson-II (Civil Action No. 12-1231)

Like the civil complaint submitted in Nelson-I, the pleading
submitted in Nelson-II arrived unaccompanied by the applicable
filing fee or by a complete IFP application.  See Nelson-II,
Docket Entry No. 1.  Therefore, like in Nelson-I, this Court
denied the Nelson-II Plaintiff in forma pauperis status without
prejudice.  See id., Docket Entry No. 2.  For the purposes of
determining whether the Nelson-II Plaintiff should qualify for
conditional in forma pauperis status, the Court surveyed the
Plaintiff's assertions and summarized them as follows:

> [Nelson-II Plaintiff's] Complaint asserts that, on
> January 25, 2012, [Nelson-II Plaintiff's] brother was
> subjected to: (a) a search without probable cause; and
> (b) excessive force, both in violation of [Nelson-II
> Plaintiff's] brother's Fourth Amendment rights; [Nelson-
> II Plaintiff] maintains that witnessing these events
> caused him severe emotional distress.  [Nelson-II
> Plaintiff stated that he was] seek[ing] "justice to
> prevent policemen from stopping innocent people and
> ridiculing them" and monetary damages in an unspecified
> amount defined as "nice settlement from the city and the
> State."

Id. at 2 (citations to docket and original brackets omitted).

In addition, while assessing Nelson-II Plaintiff's in forma
pauperis application, the Court noted:

> [Nelson-II Plaintiff] asserts that − while being
> incarcerated − he, nonetheless, keeps receiving $210 in
> cash and $200 in food-stamps, as welfare assistance.
> Moreover, while [Nelson-II Plaintiff's] Complaint
> suggests that he is receiving the aforesaid assistance

6

> because of *his obligation to support his two children,*
> [Nelson-II Plaintiff's] affidavit of poverty states that
> he uses these funds and food-stamps for purposes *other*
> than providing for his children, namely: (a) to support
> his mother (by, allegedly, giving her these $200 in food-
> stamps); and (b) to channel some of the cash funds to his
> brother (explaining his election to so channel these
> finds by stating that his "brother had 2 surgeries
> recently for a bone infection"). However, at this
> juncture, the Court need not determine whether the
> statements provided in [Nelson-II Plaintiff's] affidavit
> of poverty qualify him for *in forma pauperis* status,
> since [Nelson-II Plaintiff's] failure to submit his
> certified account statement already precludes [Nelson-II
> Plaintiff] from obtaining such status at the instant
> juncture.

Id. at 3-4, n. 1 (emphasis in original).

In response, the Nelson-II Plaintiff submitted his in forma

pauperis application. See Nelson-II, Docket Entry No. 6. This

case is now ripe for screening.

    3.   Nelson-III (Civil Action No. 12-1779)

The next civil complaint, that is, the submission that gave

rise to Nelson-III, alleged:

> On 1/25/12, [Nelson-III Plaintiff] and [Nelson-III
> Plaintiff's] twin brother arrived in A[tlantic] C[ity]
> about 11:15 - 11:30 pm, and walked 4 blocks from the
> terminal to [Nelson-III Plaintiff's] twin's muslimah
> [sic] friend apartment. She offered [them] shelter for
> the night and hospitality, [as] far as cooking some
> shrimps but [they] wanted more than just shrimps. A
> little after midnight on the 26th [they] briefly intended
> to go to McDonald[']s which was a block away from the
> terminal. A block and a half into [their] walk a police
> squad car ultimately stopped besides [them] on Ar[c]tic
> Avenue . . . . The officers jumped out on [them], as
> [the officers'] 1st words were, "we're looking for guns."
> [Nelson-III Plaintiff] felt racial[ly] profiled because
> [Nelson-III Plaintiff] and [Nelson-III Plaintiff's]
> brother are the only two black men walking ar[c]tic
> Ave[nue] . . . and just became suspects. Did these cops

get a dispatch on their radio saying someone was robbed
at gunpoint near [Nelson-III Plaintiff and Nelson-III
Plaintiff's brother's] location?   The officers were
treating [Nelson-III Plaintiff and Nelson-III Plaintiff's
brother] as if [they a]re not just tourists visiting
their hometown, and [Nelson-III Plaintiff and Nelson-III
Plaintiff's brother] committed a crime demanding that
[Nelson-III Plaintiff and Nelson-III Plaintiff's brother]
put [their] hands on [their] heads. . . .  [Nelson-III
Plaintiff] did not comply fast enough to Of[ficer]
Abrams['] demands, so [Officer Abrams] punched [Nelson-
III Plaintiff] in the face by [Nelson-III Plaintiff's]
left eye.   Then [Nelson-III Plaintiff] believe[s that
Officer Abrams] and Of[ficer] Karins slammed [Nelson-III
Plaintiff] on the ground and handcuffed [Nelson-III
Plaintiff].  This is racial profiling and assault. . .
. [Nelson-III Plaintiff] would like all charges against
[him] to be exon[e]rated or dismissed by lack of
prosecution in plain error, and [Nelson-III Plaintiff]
need[s] to be compensated for [his] injuries] and every
day [he] suffered in [ACJF] away from [his] family and
loved ones.

Nelson-III, Docket Entry No. 1, at 4-6.

Reading the statements made in the Nelson-III complaint
jointly with those made in the pleadings submitted in
Nelson-I and Nelson-II, this Court could not rule out the
possibility that the Nelson-I Plaintiff and Nelson-III Plaintiff
were the same person, and the difference in the prison
identification numbers was a result of that person's chain of
successive incarcerations.  See Nelson-III, Docket Entry No. 2,
at 5.  The Court could also not rule out the possibility that
this person might have been the Nelson-II Plaintiff's twin
brother.  See id.

The Court, therefore, granted in forma pauperis status for
the purposes of Nelson-III and screened the Nelson-III complaint

8

for <u>sua</u> <u>sponte</u> dismissal, with a clarification that – regardless of the outcome of <u>Nelson-III</u> litigation – the person seemingly appearing before the Court as both the Nelson-I Plaintiff and Nelson-III Plaintiff, had to clarify to this Court: (a) his official identity; (b) his relationship to the Nelson-II Plaintiff; and (c) the <u>in</u> <u>forma</u> <u>pauperis</u> statements indicative of the Nelson-II Plaintiff's seemingly undue receipt (or undue use) of welfare funds.[2] <u>See</u> <u>id.</u> at 6.

The Court's screening of the <u>Nelson-III</u> complaint resulted in the dismissal of the Plaintiff's "racial profiling" challenges, <u>see</u> <u>id.</u> at 8-10, as well as his challenges attacking the search incident to his arrest, his claims for damages related to the events that took place after issuance of process (of after arraignment), <u>see</u> <u>id.</u> at 14, n. 5, and also the invalidity of all his claims seeking injunctive relief.  <u>See</u> <u>id.</u> at 15-16.

However, in addressing <u>Nelson-III</u>'s false arrest and excessive force claims, this Court observed that those challenges presented a close call and the equities of the <u>Nelson-III</u> matter persuaded the Court against dismissal without an answer.  <u>See</u> <u>id.</u> at 10-14.  The Court thus directed service in <u>Nelson-III</u>.  <u>See</u> <u>id.,</u> Docket Entry No. 3.  However, the summonses issued by the Clerk were returned unexecuted because Plaintiff had made no

---

[2]  No clarification was filed by <u>Nelson-III</u> and no other submission was made by the Plaintiff in <u>Nelson-III</u>.  <u>See</u> <u>Nelson-III</u>, Civil Action No. 12-1779).

response by submitting the USM-285 forms, hence ripening Nelson-III for call for dismissal for failure to serve process within 120 days as required by Rule 4(m), Fed. R. Civ. P.  See id., Docket Entries Nos. 4 and 7.

    4.   The Nelson-IV Matter (Civil No. 12-2575)

The Clerk received a fourth Nelson submission six days after the entry of this Court's Nelson-III decision which gave rise to Nelson-IV.  See Nelson-IV, Docket Entries Nos. 1 and 1-1.  The submissions in Nelson-IV consisted of a pleading and an in forma pauperis application; both were made on behalf of "Khaleaf Majeed Nelson," that is, a litigant who referred to himself by the name utilized in the Nelson-II pleading but who, unlike the Nelson-II Plaintiff (the inmate having prison number "183904"), utilized another prison identification number, specifically, "202906." See id., Docket.  The submissions made by the plaintiff who commenced the Nelson-IV matter indicated that the Plaintiff was also confined at the ACJF.

Much like the in forma pauperis application submitted in Nelson-II, the in forma pauperis application in Nelson-IV informed this Court that Nelson IV was forwarding his food stamps to his mother while he was in confinement.  See id., Docket Entry No. 1-1, at 2.

The complaint submitted in the Nelson-IV matter named five Defendants: Officer James Herbert ("Officer Herbert"), "Officer

Warner," the Atlantic City Police Department, Atlantic City and Atlantic County Jail.  See id. at 1.  With regard to Officer Herbert, the Nelson-IV complaint alleged that the officer "lied" during certain testimony that took place as part of Nelson IV's prosecution.  See id. at 3-4.  The complaint was wholly silent as to all other Defendants.

In addition, in the "Statement of Facts" section, the Nelson-IV complaint asserted that on an unspecified date, Nelson IV drove to a destination in Atlantic City in order to, allegedly, assist Eric Malcolm ("Malcolm") and Jasmine Bunn ("Bunn") with their moving out efforts.  See id. at 4.  The complaint alleged that: (a) Officer Herbert watched Nelson IV's vehicle during all times his car remained parked next to the Malcolm/Bunn's apartment, but (b) at the end of these moving-out efforts, Officer Herbert suddenly approached Nelson IV and Malcolm, called for police back-up and, without a reason, searched Nelson IV and his car.  See id.  The Nelson-IV complaint stated that Nelson IV was "seeking a settlement for [his] pain and suffering [and for having his unspecified] mental condition . . . worsen."  Id. at 5.

The Nelson-IV complaint is now ripe for screening.

    5.   Summary

A review of the four Nelson matters reveals that these cases were filed by the same person or related individuals.  The

Nelson-I complaint (Civil No. 10-1374) has been dismissed with prejudice for failure to prosecute.  The Nelson-III complaint (Civil No. 12-1779) has also been dismissed with prejudice for failure to serve process within 120 days as required by Rule 4(m).  This leaves the Nelson-II and Nelson-IV complaints which are now both ripe for screening pursuant to 28 U.S.C. S 1915.  As these cases are related to on another, the court will screen both of them in the instant opinion.

## II.  STANDARD OF REVIEW

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Therefore, the Court must "accept as true all of the allegations in the complaint."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, the screening court is "not bound to accept as true a legal conclusion couched as a factual

allegation." <u>Id.</u> at 1950.  Correspondingly, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.' . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## III. DISCUSSION OF NELSON-IV (Civil Action No. 12-2575)

### A.   Allegations against Officer Herbert

On its face, Nelson IV's complaint mainly pertains to the allegation that Officer Herbert lied in his testimony during Nelson IV's criminal proceedings.

This claim is necessarily subject to dismissal, since witnesses are absolutely immune from civil damages based upon their testimony.  <u>See Briscoe v. LaHue</u>, 460 U.S. 325, 341-46 (1983).  That immunity extends to all witnesses, including government investigators and enforcement officers, and to all court proceedings, including trial and pre-trial stages, such as grand jury proceedings in a criminal action.  <u>See Rehberg v. Paulk</u>, 132 S. Ct. 1497 (2012); <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992).

Since any amendment would be futile because Officer Herbert is entitled to absolute immunity, Plaintiff's claims based on the

Officer's allegedly perjurious testimony will be dismissed with prejudice.

While Nelson IV's mentioning of the search conducted by Officer Herbert is not connected to the sole claim articulated in the body of the his complaint, the Court cannot rule out the possibility that Nelson IV might have wished to assert a Fourth Amendment claim alleging an unlawful search.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, the Fourth Amendment prohibits a police officer from seizing a citizen except on probable cause. See Albright v. Oliver, 510 U.S. 266, 274-75 (1994). Conversely, "when an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008). To establish a claim for unlawful arrest in violation of the Fourth Amendment, a plaintiff must state "the facts [showing that under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was

14

being committed by the person to be arrested." Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010). "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Hughes v. Meyer, 880 F. 2d 967, 969 (7th Cir. 1989).

The Plaintiff has not alleged sufficient facts to support a plausible basis for finding the search of Nelson IV's car was unlawful.  No specific circumstances surrounding the stop and search are alleged.  Consequently, the complaint fails to state a claim.

It is also unclear whether the complaint in Nelson IV is timely as to any unlawful search claims.  It is not known when in 2010 this search occurred, and it may be barred by the statute of limitations.  It appears that the search at issue took place prior to Nelson IV's incarceration since Nelson IV has been continuously incarcerated since 2010.

Federal courts look to state law to determine the limitations period for § 1983 actions.  See Wallace v. Kato, 549 U.S. 384, 387-88 (2007).  Civil rights or constitutional tort claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See id.; see also Wilson v. Garcia, 471

U.S. 261, 280 (1985).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann., § 2A:14-2, governs Plaintiff's claim here.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n. 4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).

Here, Nelson IV's complaint was executed on April 19, 2012, see Docket Entry No. 1, at 9, and – hence – could not have been submitted to prison officials for mailing to the Court prior to that date.  Thus, if the events associated with Officer Herbert's actions took place prior to April 20, 2010, challenges based on these events are time barred unless Nelson IV establishes a valid basis for tolling.

While Nelson IV's undue search claims against Officer Herbert may be barred by the statute of limitations, this Court cannot rule out that the Plaintiff might cure the deficiencies of his claims by re-pleading the specific grounds that give rise to a Fourth Amendment claim against Officer Herbert, including the date and place and circumstances.

Therefore, the Court will allow Nelson IV an opportunity to file an amended complaint in Civil Action No. 12-2575 (Nelson IV) detailing the facts, the time frame and the circumstances of his Fourth Amendment claims against Officer Herbert.  Accord Imoore v. Gasbarro, 2012 U.S. Dist. LEXIS 73114, at *16 (D.N.J. May 24,

2012) (citing Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d
Cir. 1999), which quoted DiLeo v. Ernst & Young, 901 F.2d 624,
627 (7th Cir. 1990), "for the observation that a pleading must
indicate 'the who, what, when, where, and how: the first
paragraph of any newspaper story'").  The Plaintiff will be given
forty-five (45) days to submit an amended pleading in the Nelson
IV docket (Civil Action No. 12-2575) which cures the above
deficiencies.

   **B.   Allegations Against Other Defendants**

   Nelson IV's allegations against four other Defendants will
be dismissed with prejudice.  His challenges against the police
department and the jail are facially deficient.  A jail is not a
"person" amenable to suit under 42 U.S.C. § 1983.  See Marsden v.
Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail
not an entity amenable to suit under 42 U.S.C. § 1983); Powell v.
Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (a jail
is not a "person" under § 1983); Vance v. County of Santa Clara,
928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of
corrections is an agency of the county and cannot be sued
separately from the county under § 1983).  The same applies to
the police department.  See Harper v. Franklin & Marshall
College, 2011 U.S. Dist. LEXIS 34298, at **11-12 (E.D. Pa. Mar.
30, 2011); Jones v. Vineland Police Dep't, 2011 U.S. Dist. LEXIS
19671, at *9 (D.N.J. Feb. 28, 2011).

17

And while a municipality is a "person" for purposes of §
1983, <u>see</u> <u>Bd. of the County Comm'rs of Bryan County, Oklahoma v.</u>
<u>Brown</u>, 520 U.S. 397, 403 (1997) (citing <u>Monell v. New York City</u>
<u>Dep't of Soc. Servs.</u>, 436 U.S. 658, 689(1978)), § 1983 does not
allow municipal liability under a theory of <u>respondeat</u> <u>superior</u>.
<u>See</u> <u>id.</u>  In other words, a municipality is not liable under §
1983 merely for employing someone who violates a person's civil
rights; rather, a municipality is liable only where it has in
place a policy or custom that led to the violation.  <u>See</u> <u>id.</u>
Since Nelson IV's allegations, while vague, indicate that he
named Atlantic City as a Defendant solely because Officer Herbert
was a city police officer, his purely <u>respondeat</u> <u>superior</u>
allegations are subject to dismissal for failure to state a claim
upon which relief can be granted.  <u>See</u> <u>Monell</u>, <u>supra</u>.

Finally, the <u>Nelson-IV</u> complaint contains no factual
allegations of any kind against Officer Warner.  Indeed, the
complaint does not even mention how this officer is connected
with Nelson IV's challenges.  Accordingly, the claims against
Officer Warner are subject to dismissal pursuant to Rule 8 of the
Federal Rules of Civil Procedure (requiring a short, plain
statement of the grounds of each claim against each named
defendant).  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.  Therefore the claims
against these remaining Defendants will be dismissed.

18

### C. Conclusion with Respect to <u>Nelson IV</u>

In sum, the claims against Officer Warner, Atlantic City, Atlantic County Jail, and Atlantic City Police Department will be dismissed with prejudice in <u>Nelson IV</u> (Civl Action No. 12-2575); the claim of false testimony against Officer Herbert will be dismissed with prejudice because he is immune from such a claim; and the claim of an unlawful search in violation of the Fourth Amendment against Officer Herbert will be dismissed without prejudice to the timely filing of a motion to amend.

## IV. DISCUSSION OF NELSON-II (Civil Action No. 12-1231)

Having addressed the allegations in <u>Nelson-IV</u>, the Court now turns to the latest submission made in <u>Nelson-II</u>, <u>i.e.</u>, to the <u>in forma pauperis</u> application filed in that matter by seemingly the same Plaintiff in <u>Nelson IV</u>.  See <u>Nelson-II</u>, Docket Entry No. 6. On the basis of that application, the Court will grant <u>in forma pauperis</u> status to that litigant and will direct the Clerk to file the complaint in that matter.

As discussed above, the <u>Nelson-II</u> complaint asserts that the Plaintiff suffered emotional distress from seeing his brother being subjected to excessive force and an allegedly illegal search and arrest.  The Plaintiff seeks to obtain a "nice settlement from the city and the State" for this distress.

These challenges facially fail to state a claim upon which relief can be granted and will be dismissed.

### A.    Third Party Allegations

To the extent Nelson II endeavors to capitalize on the alleged illegal search and arrest of his brother, Nelson II has no standing to raise these claims.  Section 1983 only protects those individuals who have suffered a loss of their constitutional rights.  "[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  Powers v. Ohio, 499 U.S. 400, 410 (1991).

In this case, Nelson II asserts claims based on the illegal search and arrest of his brother.  Nelson II does not allege that his own property or privacy interests were invaded in any way.  Nelson II does not allege that his brother is incapable of bringing these claims on his own behalf.  This is insufficient to establish a cognizable Section 1983 claim since Nelson II is not alleging that any of his constitutional rights were violated.  Therefore, Nelson II's claims asserted on behalf of his brother will be dismissed for lack of standing.

### B.    Emotional Distress Claims

The foregoing leaves the Court solely with Nelson II's "emotional distress" claims.  The Court concludes these claims are also subject to dismissal with prejudice because this court lacks jurisdiction to hear these claims.

20

Federal courts are courts of limited jurisdiction, and they must have the power to hear a case.  See In re Morrissey, 717 F.2d 100, 102 (3d Cir. 1983).  If the Court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Federal courts have jurisdiction over "issues arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  They may also have diversity jurisdiction over disputes between citizens of different states.  See 28 U.S.C. § 1332.  A diversity claim requires complete diversity: "no plaintiff can be a citizen of the same state as any of the defendants."  Midlantic Nat'l Bank v. Hansen, 48 F.3d 693 (3d Cir. 1995).

A claim for damages based on one's suffering of "emotional distress" presents an issue of common law tort; it does not raise any issues of federal law.  See Gatson v. New Jersey, 2009 U.S. Dist. LEXIS 104154, at *37 (D.N.J. Nov. 2, 2009) (allegation of "emotional distress . . . are state common law tort claims"), certif. denied sub nom Gatson v. Forrest, 201 N.J. 439, cert. denied, 131 S. Ct. 258 (2010); accord Ka'Anoi v. Kerr, 2008 U.S. Dist. LEXIS 2915 (E.D. Cal.) (A court must "look beyond the characterization of the complaint to the specified conduct [asserted]").

21

Moreover, Nelson II's claim cannot be considered a constitutional due process claim because it would be barred by the operation of the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq, since the NJTCA provides all the process that is due.[3]  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir.1983); Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J.1998).

In addition, there is no diversity jurisdiction because Nelson II and the police officers who were allegedly involved in the illegal search are all from the State of New Jersey.  See Nelson-II, Docket Entry No. 1.  Thus, the Nelson-II allegations must be dismissed for lack of jurisdiction.

Therefore, Nelson II's claims for emotional distress will be dismissed with prejudice.

C.    **Leave to Amend**

As discussed above, Nelson II's complaint fails to state a claim for relief which is either jurisdictionally cognizable or meriting relief.  The Nelson-II complaint will therefore be dismissed with prejudice.  This complaint states no Fourth Amendment claim on behalf of Plaintiff, and any attempt to amend

---

[3]  Morever, the Nelson-II complaint does not suggest compliance with procedural requirements of the NJTCA, which directs that a notice of claim be filed with the public entity not later than the ninetieth day after accrual of the underlying cause of action.  See N.J. Stat. Ann. § 59:8-8(a). Failure to file the required notice necessarily results in dismissal of a plaintiff's tort claims. See N.J. Stat. Ann. § 59:8-3.

would be futile.  In addition, this court lacks jurisdiction to hear Plaintiff's claims for emotional distress.  Accordingly, Plaintiff's claims regarding the search and any resulting emotional distress will be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, the Court will allow the Nelson-II and Nelson-IV matters to be filed in forma pauperis and the Court will direct the Clerk to file the complaints in these two matters.

Pursuant to 28 U.S.C. § 1915(e)(2), the Court will dismiss these pleadings.  The Nelson-IV claims against Officer Herbert alleging an illegal search will be dismissed without prejudice, with leave to clarify the facts of these challenges in accordance with the guidance provided herein.  The remaining Nelson-IV claims will be dismissed with prejudice.  The entirety of Nelson-II claims will be dismissed with prejudice.

The accompanying order will be entered.


 s/ Jerome B. Simandle
JEROME B. SIMANDLE
Chief Judge
United States District Court


Dated:  **January 14, 2013**

23